1   GABRIEL M. HUEY, Bar No. 291608
    Gabriel.Huey@klgates.com
2   K&L GATES LLP
    10100 Santa Monica Blvd.
3   8th Floor
    Los Angeles, CA  90067
4   Telephone: 310.552.5000
    Fax No.:    310.552.5001
5

6
    Attorneys for Defendants,
7   PACIFIC COAST SIGHTSEEING TOURS
    & CHARTERS, INC., COACH USA, INC.
8   AND MEGABUS WEST, LLC

9                    UNITED STATES DISTRICT COURT

10                   EASTERN DISTRICT OF CALIFORNIA

11

12

13   TRACY WOODS, individually and        Case No.
     on behalf of others similarly situated,
14                                         *(Originally filed in County of Kern
              Plaintiff,                   Superior Court Case No.: BCV-24-
15                                         100494)*
          vs.
16                                         **DEFENDANTS PACIFIC COAST
     PACIFIC COAST SIGHTSEEING             SIGHTSEEING TOURS &
17   TOURS & CHARTERS, INC.,               CHARTERS, INC., COACH USA,
     COACH USA, INC., MEGABUS             INC., AND MEGABUS WEST, LLC'S
18   WEST, LLC, and DOES 1 through         NOTICE OF REMOVAL TO
     25, inclusive,                        FEDERAL COURT**
19
              Defendants.                  **[28 U.S.C. §§ 1332, 1441, & 1446]**
20
                                           Complaint filed: February 13, 2024
21

22

23

24

25

26

27

28

1  **TO THE CLERK OF THE FEDERAL DISTRICT COURT FOR THE EASTERN**
2  **DISTRICT OF CALIFORNIA:**

3        PLEASE TAKE NOTICE THAT pursuant to 28 U.S.C. sections 1332, 1441 and
4  1446, Defendants PACIFIC COAST SIGHTSEEING TOURS & CHARTERS, INC.,
5  COACH USA, INC., and MEGABUS WEST, LLC ("Defendants"), by and through
6  their attorneys, K&L Gates LLP, hereby remove to this Court the action entitled, *Tracy*
7  *Woods v. Pacific Coast Sightseeing Tours & Charters Inc., et al.*, Case No. BCV-24-
8  100494 (the "State Court Action") from the Superior Court of the State of California,
9  County of Kern.  In support of this Notice of Removal of Action ("Notice"), Defendants
10  state as follows:

11  **I.     STATEMENT OF JURISDICTION**

12        1.     This Court has original jurisdiction over this Action pursuant to the Class
13  Action Fairness Act of 2005 ("CAFA"), which vests the United States district courts
14  with original jurisdiction of any civil action: (a) that is a class action with a putative
15  class of more than a hundred members; (b) in which any member of a class of plaintiffs
16  is a citizen of a State different from any defendant; and (c) in which the matter in
17  controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.
18  *See* 28 U.S.C. §1332(d).  CAFA authorizes removal of such actions in accordance with
19  28 U.S.C. § 1446.

20        2.     This Court also has original jurisdiction over this Action pursuant to 28
21  U.S.C. § 1332(a), which vests the United States district courts with original jurisdiction
22  of any civil action: (a) in which there is complete diversity; and (b) in which the matter
23  in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  *See*
24  28 U.S.C. § 1332(a).  Removal on diversity grounds is authorized in accordance with
25  28 U.S.C. § 1446.

26        3.     As set forth below, this case meets all of the requirements for removal
27  under CAFA and diversity jurisdiction and has been timely and properly removed by

28

the filing of this Notice.

4.     By filing this Notice, Defendants do not intend to waive, and hereby reserve, any objection as to venue, the legal sufficiency of the claims alleged in the Action and all other defenses.  Defendants reserve the right to supplement and amend this Notice.

**II.   PLEADINGS, PROCESS, AND ORDERS**

5.     On February 13, 2024, Plaintiff TRACY WOODS ("Plaintiff") filed a Class Action Complaint for Damages against Defendants and various Doe defendants in Kern County Superior Court:  *Tracy Woods v. Pacific Coast Sightseeing Tours & Charters, Inc., et al.*, Case No. BCV-24-100494 (hereinafter, the "Complaint").  A copy of the Complaint is attached to the Declaration of Gabriel M. Huey ("Huey Decl.") as **Exhibit "A"**.

6.     On March 6, 2024, Plaintiff served the Summons and Complaint on Defendants through Defendants' process server, CT Corporation System, copies of the Service of Process Transmittal Summary are attached to Huey Decl. as **Exhibit "B"**.

7.     Along with the Summons and Complaint, Defendants have received THE Notice of Assignment to Judge for All Purposes, Order to Show Cause, and Case Management Conference.  These documents are attached to Huey Decl. as **Exhibit "C"**.

8.     Defendants filed and served their Answer to Plaintiff's Unverified Complaint on April 5, 2024.  Defendants' Answer is attached to Huey Decl. as **Exhibit "D"**.

9.     Pursuant to 28 U.S.C. section 1446(d), the attached Exhibits A - D constitute all process, pleadings, and orders served on Defendants or received by Defendants in this action. To Defendants' knowledge, no further process, pleadings, or orders related to this case have been filed in Kern County Superior Court or served by any party.

10.     To Defendants' knowledge, no proceedings related hereto have been heard

in Kern County Superior Court.

**III.    TIMELINESS OF REMOVAL**

11.    This Notice of Removal is timely filed as it is filed within thirty (30) days of March 6, 2024, the date of service of the Summons and Complaint, and within one year from the commencement of this action.  *See* 28 U.S.C. § 1446(b).

**IV.    BASIS FOR REMOVAL**

12.    This Court has original jurisdiction over this Action pursuant to CAFA (28 U.S.C. § 1332(d)) and diversity jurisdiction (28 U.S.C. § 1332(a)).

**A.  CAFA Jurisdiction**

13.    CAFA creates federal jurisdiction over lawsuits in which "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen of a State different from any defendant," and involves a putative class that consists of more than 100 members.  28 U.S.C. §§ 1332(d)(2)(A) and (d)(5).  Each of these three requirements is met.[1]

14.    As set forth below, this Court has jurisdiction over this case under CAFA, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) Defendants are not a state, state official, or

[1] A notice of removal need only provide a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). Because § 1446 tracks Rule 8's liberal pleading standard, a notice of removal need only allege the grounds plausibly and need not be supported by evidentiary submissions. *See Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) ("In sum, as specified in § 1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold. Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation."); *Vigil v. DAK Res., Inc.*, No. 2:23-cv-00163, 2023 WL 5917522, at *1 (E.D. Cal. Aug. 11, 2023) ("The notice of removal 'need not contain evidentiary submissions,' rather a defendant's 'plausible allegation that the amount in controversy exceeds the jurisdictional threshold suffices.").

4.

other governmental entity; (3) there is diversity between at least one class member and one of the Defendants; and (4) the total amount in controversy for all class members exceeds $5,000,000.

### 1) The Proposed Class Contains At Least 100 Members

15.     28 U.S.C. section 1332(d)(5)(B) sets forth that the provisions of CAFA do not apply to any class action where "the number of members of all proposed plaintiff classes in the aggregate is less than 100." This requirement is easily met in the case at bar.

16.     Plaintiff seeks to represent a class consisting of "[a]ll individuals who are or previously were employed by Defendants in California, classified as non-exempt employees paid on an hourly basis" during the relevant Class Period who were either: (1) "required to remain on-call or standby during at least one layover"; (2) "worked shifts of 10 hours or more and were not provided lawful meal breaks"; (3) "worked shifts of 4 hours or more and were not provided lawful rest breaks"; (4) "were provided with inaccurate wage statements"; and/or (5) "whom the Defendants knowingly failed to timely pay all wages due to said employees." (Complaint ("Comp.") at ¶ 34.) Plaintiff filed this Complaint on February 13, 2024. According to Plaintiff's definitions, there are approximately 368 putative class members in this case to date.

### 2) Defendants are Not Governmental Entities

17.     Under 28 U.S.C. section 1332(d)(5)(B), CAFA does not apply to class actions where "primary defendants are States, State officials, or other governmental entities against whom the district court may be foreclosed from ordering relief."

18.     Defendants are corporations and a limited liability company, not a state, state official, or other government entity exempt from CAFA.

### 3) Diversity of Citizenship is Satisfied

19.     CAFA's minimal diversity requirement is satisfied, *inter alia*, when "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. §§ 1332(d)(2)(A); 1453(b). In a class action, only the citizenship of the named

parties is considered for diversity purposes and not the citizenship of the class members. *Snyder v. Harris*, 394 U.S. 332, 339-40 (1969).  Minimal diversity of citizenship exists here because Plaintiff and at least one of the Defendants are citizens of different states.

20.    An individual's domicile supporting diversity of citizenship can be determined by, *inter alia*, physical residency and place of employment.  *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986); *Lopez v. Costco Wholesale Corporation*, 2021 WL 487368, *2 (E.D. Cal. Feb. 10, 2021).  Plaintiff's Complaint states that she, "[a]t all relevant times," "was a resident of Kern County in the State of California." (Compl., ¶ 20.)  Plaintiff alleges she was employed by Defendants from approximately June 2022 through March 2023. (Compl., ¶ 20.)  Throughout her employment, Plaintiff's address on file was in the city of Bakersfield, California.  Therefore, at the time Plaintiff commenced this action and, upon information and belief, at the time of removal, Plaintiff resided in and is a citizen of the State of California.

21.    Conversely, none of the Defendants are citizens of California (as discussed below).  By way of example, Defendant Coach USA, Inc was incorporated in the State of Delaware and organized under the laws of that state.  Thus, Coach is a citizen of Delaware, based on its place of incorporation.  28 U.S.C. § 1332(c)(1); *see also Hertz Corp. v. Friend*, 559 U.S. 77, 85-86 (2010).

22.    Coach's corporate headquarters and principal place of business is in Paramus, New Jersey.  *See also Hertz*, 559 U.S. at 92-93 (the principal place of business is "where a corporation's officers direct, control, and coordinate the corporation's activities").  Thus, Coach is also a citizen of New Jersey.  28 U.S.C. § 1332(c)(1).

23.    The presence of Doe defendants in this case has no bearing on diversity with respect to removal.  *See* 28 U.S.C. § 1441(a) ("[f]or purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded").

24.    Accordingly, the named Plaintiff is a citizen of a State different from at least one of the Defendants (and, in fact, is different from all of the Defendants as

discussed below), and diversity exists for purposes of CAFA jurisdiction.  See 28 U.S.C. §§ 1332(d)(2)(A), 1453.

### 4)  The Amount in Controversy Exceeds $5,000,000[2]

25.  Although Defendants deny all liability alleged in the Complaint, if damages or restitution were awarded on Plaintiff's claims, the aggregate amount as to the putative class would exceed $5,000,000.[3]

26.  This Court has jurisdiction under CAFA, which authorizes the removal of class actions in which the amount in controversy for all class members in the aggregate exceeds $5,000,000.  28 U.S.C. § 1332(d).

27.  The removal statute requires that a defendant seeking to remove a case to federal court must file a notice "containing a short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  The Supreme Court, in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S.Ct. 547 (2014), recognized that "as specified in §1446(a), a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 81.  Supporting evidence is required only if the plaintiff contests, or the court questions, the allegations of the notice to removal. *Id.* at 89.  Otherwise "the defendant's amount-in-controversy allegation should be accepted" just as a plaintiff's amount-in-controversy allegation is

---

[2] The alleged damages calculations contained herein are for purposes of removal only. Defendants deny that Plaintiff is entitled to any relief whatsoever and expressly reserves the right to challenge Plaintiff's alleged damages in this case.

[3] In order to establish the amount in controversy requirement is met, Defendants do not concede liability nor is it required to do so. *See Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) ("Even when defendants have persuaded a court upon a CAFA removal that the amount in controversy exceeds $5 million, they are still free to challenge the actual amount of damages in subsequent proceedings and at trial. This is so because they are not stipulating to damages suffered, but only estimating the damages that are in controversy."); *Lewis v. Verizon Communications, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010) ("To establish the jurisdictional amount, Verizon need not concede liability for the entire amount, which is what the district court was in essence demanding by effectively asking Verizon to admit that at least $5 million of the billings were "unauthorized" within the meaning of the complaint."). Moreover, defenses do not affect the amount in controversy. *See St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 295-296 (1938); *Riggins v. Riggins*, 415 F.2d 1259, 1261-1262 (9th Cir. 1969).

1    accepted when a plaintiff invokes federal court jurisdiction. *Id*. at 82.

2        28.    Here, Plaintiff's allegations and claims make evident that she places more

3    than $5,000,000 in controversy.

4        29.    The Complaint asserts seven (7) causes of action: 1) unpaid wages and

5    overtime; 2) unpaid meal period premiums; 3) unpaid rest period premiums; 4) untimely

6    and inaccurate wage statements; 5) waiting time penalties; 6) violations of Business &

7    Professions Code § 17200, *et seq*.; and 7) penalties pursuant to Labor Code § 2699.3,

8    *et seq*.  (Compl., ¶¶ 49-107.)

9        30.    In connection with her claims, Plaintiff seeks several categories of

10   monetary relief, including, *inter alia*, (1) unpaid wages; (2) "liquidated damages"; (3)

11   unpaid overtime wages; (4) meal period wages; (5) rest period wages; (6) statutory

12   penalties under Labor Code sections 203 and 226(e); (7) civil penalties under Labor

13   Code section 2269(a)-(f); (8) reasonable attorneys' fees and costs; (8) restitution under

14   Business and Professions Code 17203; and (9) prejudgment interest and costs.  (Compl.,

15   Prayer.)

16       31.    Alleging a UCL violation extends the statute of limitations on Plaintiff's

17   wage and hour claims from three to four years from the filing of the Complaint, or going

18   back to February 13, 2020.  *See* Cal. Bus. & Prof. Code § 17208; *Cortez v. Purolater*

19   *Air Filtration Products Co*., 23 Cal. 4th 163, 178-79 (2000) (four-year statute of

20   limitations for restitution of wages under the UCL).

21                   i.   <u>Plaintiff's First Cause of Action for Unpaid Regular, and Overtime</u>

22                        <u>Wages Places $**1,055,844.35** in Controversy</u>

23       32.    By way of her first cause of action, Plaintiff and the putative class seek

24   allegedly unpaid wages at minimum, regular and overtime wage rates pursuant to

25   California Labor Code sections 510 and 1198.  (Compl., ¶¶ 49-59.)  Plaintiff alleges

26   that she and the putative class members incurred unpaid minimum, regular, and

27   overtime compensation damages because Defendants failed to compensate them for all

28   hours worked, and failed to pay overtime for hours worked in excess of eight hours per

1   day and/or in excess of 40 hours in a week.  (*Id.*)  However, Plaintiff does not state the
2   amount of unpaid regular and overtime hours she and the putative class allegedly
3   worked each week.

4       33.     Between February 13, 2020 (4 years prior to the date Plaintiff filed her
5   Complaint) through April 3, 2024, Defendants employed approximately 368 non-
6   exempt workers in the state of California.  These 368 non-exempt employees worked
7   approximately 16,357 work weeks, and their average hourly rate of pay was
8   approximately $21.02.

9       34.     If Plaintiff prevails on her claim for regular wages, she and the putative
10  class may be entitled to recovery of all unpaid wages.  Moreover, to determine the
11  monetary amount in controversy for Plaintiff's overtime claim, the total number of
12  unpaid hours worked by Plaintiff and the putative class that would have been considered
13  overtime or double-overtime hours is multiplied by one and one-half or two times their
14  respective regular rates of pay rate.  *See* Lab. Code § 510.

15      35.     Plaintiff does not allege a specific amount of damages for these causes of
16  action, but asserts that Defendants, "had a uniform practice of" paying Plaintiff and
17  putative class members "without regard to the true number of hours they worked" and
18  failing to pay wages for time where Plaintiff and putative class members were on-call
19  or on standby, including overtime wages.  (Compl., ¶ 54.)    The foregoing indicates
20  more than a rare or sporadic violation rate.  Even taking an extremely conservative
21  approach of one hour of regular wages and one hour of one and one-half times overtime
22  wages per workweek, Plaintiff's regular wages claim places at least **$343,824.14** into
23  controversy ($21.02 x 1 hour per week x 16,357 workweeks) and her overtime claim
24  places at least **$515,736.21** into controversy ($21.02 x 1 hour per week 1.5 overtime
25  rate x 16,357 workweeks).

26      36.     Further, Plaintiff seeks liquidated damages under Labor Code section
27  1194.2 for Defendants' alleged failure to pay minimum wages to putative class
28  members (Compl., ¶ 58).  If she prevails, liquidated damages may be awarded in the

amount equal to the unpaid minimum wages.  Starting from January 1, 2020, the California state minimum wage has been at least $12 per hour.[4]  Taking the same conservative approach of one hour of unpaid minimum wage per week per employee, Plaintiff seeks to recover another **$196,284** from this action ($12 x 1 hour per week x 16,357 workweeks).

37.    In sum, although Defendants vigorously deny Plaintiff's allegations, including the alleged damages, if Plaintiff was to prevail on her unpaid wage claims with respect to herself and the putative class, the amount in controversy for those claims alone would be **$1,055,844.35**.

ii.  <u>Plaintiff's Second and Third Causes of Action for Failure to Provide Meal and Rest Periods Places **$2,062,944.84** in Controversy</u>

38.    Plaintiff's second and third causes of action allege that Defendants never provided Plaintiff or the putative class members with a meal or rest period that complied with California law and never paid them meal and rest period premium payments.  Specifically, Plaintiff alleges that she was "not provided an off-duty meal break when she worked at least ten hours in a workday [and] was not relieved of all duties during her second meal break."  (Compl., ¶ 63.)  She similarly alleges that she "was not permitted to take lawful ten-minute rest breaks during her shifts."  (Compl., ¶ 71 [emphasis added].)  Plaintiff further alleges that Defendants failed to pay Plaintiff and the putative class members all meal and rest period premium payments when due.  (Compl., ¶¶ 64, 72.)

39.    Labor Code section 226.7 provides that an employer who fails to provide a 30-minute meal period for every five hours worked, or a 10-minute rest break for every four hours worked or major fraction thereof, can be liable for up to one meal period premium and one rest break premium per workday.  Lab. Code § 226.7.  Meal

---

[4] https://www.dir.ca.gov/dlse/faq_minimumwage.htm

1  and rest break premiums are equivalent to one hour of the employee's regular rate of
2  compensation. *Id.*

3      40.    These causes of action dramatically increase the amount in controversy in
4  this case.  Read together, the Complaint alleges that Defendants never provided Plaintiff
5  or the putative class members with a compliant second meal period or rest period and
6  never paid them premium payments.   Those allegations justify maximum, 100%
7  violation rates.   Regardless, even a conservative interpretation of three (3) missed
8  second meal periods per week and three (3) missed rest breaks per week places at least
9  **$2,062,944.84** into controversy.  Specifically, three (3) unpaid meal period premiums
10 per week places $1,031,472.42 in controversy (16,357 workweeks x 3 violations per
11 week x $21.02 per hour), and three (3) unpaid rest break premiums per week represents
12 another $1,031,472.42, for a total of **$2,062,944.84**.

13          iii.  Plaintiff's Fourth Cause of Action for Failure to Provide Accurate
14               Itemized Statements Places **$452,000** in Controversy

15     41.   Labor Code Section 226(a) provides that employers must, at the time of
16 payment of wages, issue itemized wage statements which reflect nine (9) enumerated
17 categories of information, including gross wages earned, total hours worked,
18 deductions, net wages earned, inclusive dates of the pay period, name of the employee
19 and name and address of the legal entity that is the employer.

20     42.   Section 226(e) provides for a statutory penalty for violations of Labor
21 Code section 226(a)'s wage statement requirements of $50 or actual damages per
22 employee for the initial pay period in which a violation occurs and $100 per employee
23 for each violation in a subsequent pay period, not exceeding an aggregate amount of
24 $4,000.  Lab. Code § 226(a).  The statutory period for Labor Code section 226(e)
25 penalties is one year.  Cal. Code Civ. Proc. § 340.

26     43.   In her fourth cause of action, Plaintiff alleges that Defendants "failed to
27 provide written wage statements that properly and accurately itemized the number of
28 hours worked by Plaintiff and the Class Members at the effective regular rates of pay

11.

and the effective overtime rates and the gross and net wages earned by Plaintiff and Class Members." (Compl., ¶ 77.)  Plaintiff's wage statement claim is predicated in part on her unpaid wage and meal and rest break claims.  The Complaint expressly incorporates allegations related to Plaintiff's unpaid wage and meal and rest break claims into her fourth cause of action.  (Compl., ¶ 75 ["Plaintiff and the Itemized Statement Class re-alleges and incorporates by this reference, as though fully set forth herein, the above paragraphs of this complaint."].)  Additionally, Plaintiff alleges that these violations allegedly took place at "[a]ll times relevant."  (Compl., ¶ 77).  Accordingly, Plaintiff alleges that a wage statement violation occurred in each pay period worked by putative class members during the statute of limitations period.

44.    From February 13, 2023 through April 3, 2024, Defendants employed 113 non-exempt hourly workers.  Assuming that all of the putative class members have reached the maximum penalty cap of $4,000 each and are not eligible to accrue any further penalties, Plaintiff places at least **$452,000** into controversy (113 employees x $4,000).

### iv. Plaintiff's Fifth Cause of Action for Failure to Pay Wages Upon Separation Places **$1,215,796.80** in Controversy

45.    Plaintiff also alleges a claim for failure to pay wages upon separation of employment under California Labor Code section 203, which has a maximum statutory penalty of 30 days of wages per affected employee.  The statute of limitations for a wage action is three years. *See* Cal. Code Civ. Proc. § 338.

46.    Because waiting time penalties can arise with any willful failure to pay wages, and Plaintiff alleges that she and the separated putative class members were not paid overtime wages, minimum wages, meal period premium wages, and rest period premium wages, and all wages due, even minute amounts of unpaid wages could give rise to waiting time penalties under Plaintiff's allegations. (Compl., ¶ 64, 72.)  *See* Lab. Code § 203.

47.    Here, there are approximately 241 non-exempt, hourly employees in

12.

California whose employment with Defendants ceased within the three-year statute of limitations. Thus, assuming that each of these employees seek the maximum statutory penalty of 30 days of wages per employee, and using the average hourly rate of pay of $21.02, the amount in controversy for Plaintiff's and the putative class's waiting time penalties claim alone would be **$1,215,796.80** (241 terminated employees x 30 days x 8 hours x $21.02 per hour).

v. <u>Plaintiff's Seventh Cause of Action for Enforcement of Private</u>
<u>Attorneys General Act of 2004 Places **$287,100** In Controversy</u>

48.   Further, Plaintiff alleges that Labor Code § 2699(f) "imposes upon Defendants a penalty of one hundred dollars ($100.00) for each aggrieved employee per pay period for the initial violation and two hundred ($200.00) for each aggrieved employee per pay period for each subsequent pay period[.]" (Compl., ¶ 99).

49.   Violations of Labor Code § 2699(f) are subject to a one-year statute of limitations.

50.   From February 13, 2023 through April 4, 2024, there were approximately 113 non-exempt employees who were paid bi-weekly and worked an estimated 2,984 workweeks. As such, there were 1,492 pay periods between February 13, 2023 and April 4, 2024.

51.   Thus, assuming that each of these employees suffered at least one (1) qualifying California Labor Code violation each pay period and default PAGA penalty applies, the amount in controversy is **$287,100** ($11,300 for the initial pay period ($100 x 113 initial pay periods) and $275,800 for the subsequent pay periods ($200 x 1379 subsequent pay periods)).

vi. <u>Plaintiff's Request for Attorney's Fees Places Another **$1,168,396**</u>
<u>in Controversy</u>

52.   Finally, Plaintiff seeks reasonable attorneys' fees, which must also be considered in determining whether the jurisdictional limit is met. (Compl., Prayer, ¶ 18.) "Where an underlying statute authorizes an award of attorneys' fees, either with

13.

mandatory or discretionary language, such fees may be included in the amount in controversy." *Lowdermilk v. U.S. Bank National Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007) (citing *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155-56 (9th Cir. 1998)). The Ninth Circuit has "long held . . . that attorneys' fees awarded under fee-shifting statutes or contracts are included in the amount in controversy." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019); *see also Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Accordingly, future attorney's fees are properly included in calculating the amount in controversy for CAFA removal. *Id.*

53.    In California, it is not uncommon for an attorneys' fee award to be twenty-five to thirty percent of the total recovery in a class action. Even at 25%, Plaintiff places another approximately **$1,268,421.50** ([$1,055,844.35 + $2,062,944.84 + $452,000 + $1,215,796.80 + $287,100] x 25%) into controversy.

vi. <u>Plaintiff Places at Least **$6,342,107.49** Into Controversy in Total</u>

54.    Although Defendants deny that Plaintiff and the putative class are entitled to any relief, accepting Plaintiff's claims as true, it is more likely than not that the amount in controversy in this case exceeds **$6,300,000:**

| | |
|---|---|
| Unpaid Regular and Overtime Wages and Liquidated Damages | $1,055,844.35 |
| Failure to Provide Meal And Rest Breaks | $2,062,944.84 |
| Failure to Provide Accurate Itemized Statements | $452,000 |
| Failure to Pay Wages at Termination | $1,215,796.80 |
| Private Attorney General Enforcement | $287,100 |
| Attorneys' Fees | $1,268,421.50 |
| **Total** | **$6,342,107.49** |

55.    Based on even the most conservative calculations, the $5 million jurisdictional amount requirement of CAFA is met.

56.    Defendants provide the foregoing calculations only to demonstrate that the

14.

amount in controversy here easily exceeds the amount in controversy requirement of CAFA.  Defendants make no admission of any liability or damages with respect to any aspect of this case, nor does it endorse or concede that the proffered methodology for such calculations passes muster.

**B.  Diversity of Citizenship**

57.     28 U.S.C. § 1332(a) creates federal jurisdiction over lawsuits in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states…."  Each of these requirements is met.

58.     First, there is complete diversity between Plaintiff and the Defendants.  As alleged in the Complaint, Plaintiff is a resident of California.  (Compl., ¶ 20).  At the time this action began in state court, Defendant Pacific Coast Sightseeing Tours & Charters, Inc. was incorporated in the state of Florida, but had ceased operations and thus had no principal place of business.  Defendant Coach USA, Inc. was incorporated in the state of Delaware and had its principal place of business in Paramus, New Jersey.  Defendant Megabus West, LLC was a limited liability corporation formed under the laws of the state of Nebraska with a sole member, Independent Bus Company, Inc. which is both headquartered and has its principal place of business in New Jersey.

59.     The amount in controversy also exceeds $75,000.  As explained above, the amount in controversy is approximately $6,300,000.

**V.   VENUE**

60.     Venue lies in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. §§ 84(c), 1441(a), and 1446(a).  Plaintiff originally brought this action in the Superior Court of the State of California, County of Kern.  Based on the location of the California state superior court where Plaintiff filed her Complaint, the appropriate assignment of this action is to the Fresno Division.

**VI.   NOTICE OF STATE COURT AND PLAINTIFF**

61.     Contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, as required by 28 U.S.C. §

1446(d), written notice of this Notice of Removal will be filed with the Clerk of the Superior Court of the State of California for the County of Kern.

62.    In addition, such filing will be given by the undersigned to counsel for Plaintiff.

63.    WHEREFORE, Defendants pray that the Court remove this civil action from the Superior Court of the State of California, County of Kern, to the United States District Court for the Eastern District of California.


Dated:        April 5, 2024

GABRIEL M. HUEY
K&L GATES LLP
Attorney for Defendants
PACIFIC COAST SIGHTSEEING
CHARTERS & TOURS, INC., COACH
USA, INC., AND MEGABUS WEST,
LLC

16.